# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| SELECT MEDICAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS COOK, in his capacity as the | ) | |
| Secretary of Finance for the State of | ) | |
| Delaware; PATRICK T. CARTER, in his | ) | C.A. No. _____ |
| capacity as the Director of Revenue for the | ) | |
| State of Delaware; MARK UDINSKI, in his | ) | |
| capacity as the State Escheator of the State of | ) | |
| Delaware, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## VERIFIED COMPLAINT FOR EQUITABLE, DECLARATORY, INJUNCTIVE AND OTHER RELIEF

Plaintiff Select Medical Corporation ("Select Medical" or "Plaintiff"), for its claims against the Defendants Thomas Cook, in his capacity as the Secretary of Finance for the State of Delaware, Patrick T. Carter, in his capacity as the Director of Revenue for the State of Delaware, and Mark Udinski, in his capacity as the State Escheator for the State of Delaware (the "State Escheator") (collectively, "Defendants"), seeks a declaratory judgment and preliminary and permanent injunctions, and alleges as follows:

## **NATURE OF THE ACTION**

1.       Plaintiff brings this application for a declaratory judgment and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, against Defendants by way of Verified Complaint. Plaintiff seeks to enjoin Defendants from continuing to act against Plaintiff in a manner that violates federal common law, exceeds their lawful authority under the Delaware Escheats Law, Chapter 11, Subchapter IV, Title 12 of the Delaware Code and related regulations (the "Delaware Escheat Law"), violates Plaintiff's substantive due process rights, the Takings Clause, the Commerce Clause and the Full Faith and Credit Clause of the United States Constitution, as well as similar provisions of the Delaware Constitution.   Plaintiff's claims arise from Defendants' demand that Plaintiff pay the sum of $297,436.55 as purported unclaimed property for the period 1997 through 2001.

2.       Plaintiff also brings this action pursuant to 42 U.S.C. § 1983 to enjoin Defendants' deprivation of Plaintiff's rights, privileges and immunities as guaranteed by the Constitution of the United States.

3.       In his Statement of Findings and Request for Payment dated March 4, 2013 (the "Demand for Payment" or the "Demand"), which is attached as Exhibit A to this Verified Complaint, the State Escheator, on behalf of himself, the Director of the Division of Revenue and the Secretary of Finance, demanded payment of an unclaimed property liability, stating: "Failure to remit the $297,436.55 within 30 days may result in the imposition of penalties and interest as provided in the Delaware Code."   In an email dated March 28, 2013, the State Escheator repeated his demand for payment by April 4, 2013.

4.       Defendants' Demand for Payment is unlawful and should be enjoined because, *inter alia*:

a.      The Demand for Payment violates federal common law and the priority rules established in *Delaware v. New York*, 507 U.S. 490 (1993) and *Texas v. New Jersey*, 379 U.S. 674 (1965);

b.      Defendants violate federal common law and intentionally have exceeded their authority under Delaware law, 12 *Del. C.* §1155, by ***estimating*** an unclaimed property liability through extrapolation of amounts paid to all other states for a different time period (*i.e.*, 2002-2008), even though Plaintiff has records from which an actual liability (if any) can be determined and owners of unclaimed property can be identified from the period being addressed in the Demand (*i.e.*, 1997-2001);

c.      The Demand for Payment results from the retroactive application of an amendment to the Delaware Escheat Law (*i.e.*, Senate Bill No. 272) in violation both of the express language of the amendatory bill and Plaintiff's due process rights as guaranteed by the United States and Delaware Constitutions;

d.      The Demand for Payment is barred by the statute of limitations in 12 *Del. C.* § 1158(a) and, therefore, interferes with Plaintiff's property interest in being free from Defendants' stale enforcement actions in violation of Plaintiff's due process rights;

e.      The methodology that Defendants used unlawfully to estimate a liability is arbitrary, capricious, and against the manifest weight of the evidence; and

f.      The use of estimation by extrapolation of amounts owed to other states here is contrary to the public policy underlying the Delaware Escheat Law, which is to reunite property with owners, because an estimate of unclaimed property does not identify specific property or the owners of such property and, therefore, such property is not capable of being returned to any owners.

5.      Plaintiff seeks a preliminary injunction enjoining Defendants from enforcing the Demand against Plaintiff and continuing to conduct its audit of Plaintiff while the merits of the case can be decided.

## THE PARTIES

6.      Plaintiff is a corporation organized under the laws of the State of Delaware, with its principal place of business in Mechanicsburg, Pennsylvania.  It operates specialty hospitals and outpatient rehabilitation clinics in the United States.  Plaintiff operates a long term acute care hospital in Delaware and provides outpatient rehabilitation services in the state.  Plaintiff contributes to the economy of Delaware and other states as an employer and taxpayer, and provides needed health care services to the citizens of many states, including Delaware.  Plaintiff was incorporated in Delaware in December 1996 and began operations in 1997.

7.      Thomas Cook is the Secretary of Finance for the State of Delaware, located at Carvel State Office Building, 820 North French Street, Wilmington, Delaware.  The Delaware Escheat Law provides that "[t]here shall be an Escheator of the State, who shall be the Secretary of Finance or the Secretary's delegate.  The administration and enforcement of [the Delaware Escheat Law] are vested in the Secretary of Finance or the Secretary's delegate."  12 *Del. C.* § 1102.

8.      Patrick Carter is the Director of Revenue for the Delaware Department of Finance, located at Carvel State Office Building, 820 North French Street, Wilmington, Delaware.  On information and belief, Mr. Carter reports up to the Secretary of Finance, and the State Escheator reports up to Mr. Carter.

9.      Mark Udinski is the State Escheator for the State of Delaware, located at Carvel State Office building, 820 North French Street, Wilmington, Delaware.  "The State Escheator

may make such rules and regulations as the Escheator may deem necessary to enforce [the Delaware Escheator Law]." 12 *Del. C.* § 1154.

**JURISDICTION**

10.     The Court has jurisdiction under 28 U.S.C. § 1331, as the case presents a controversy arising under the laws and Constitution of the United States.   Jurisdiction over claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendants reside in the district and a substantial part of the events giving rise to the claim and substantial part of the events giving rise to the claim occurred in this district.

**FACTUAL ALLEGATIONS**

**Delaware Escheat Law**

12.     Each of the 50 states and the District of Columbia have unclaimed property laws pursuant to which the States hold property that is unclaimed by the owners as custodians until the owners claim such property.

13.     The Delaware Escheat Law is straightforward and unambiguous.

14.     Pursuant to the Delaware Escheat Law, the State of Delaware regulates the reporting and collection of unclaimed and abandoned property.

15.     In Delaware, unclaimed or abandoned property is "property against which the full period of dormancy has run." *Id.* at § 1998(1).

16.     The "period of dormancy" is "the full and continuous period of 5 years . . . during which an owner has ceased, failed or neglected to exercise dominion or control over property . . . or to do any other act in relation to or concerning such property." *Id.* at § 1198(9)a.

17.     A "holder" of unclaimed property is any person having "possession, custody or control of the property of another person . . . and every other legal entity incorporated or created under the laws of [Delaware] or doing business in [Delaware]." *Id.* at § 1198(7).

18.     An "owner" of property under the Delaware Escheats Law is "any person holding or possessing property by virtue of title or ownership." *Id.*

19.     The Delaware Escheat Law provides that the "State Escheator shall deposit into the General Fund all moneys or proceeds of property received pursuant to this subchapter." *Id.* at § 1131.  "The State Escheator ***shall*** maintain a public record of all names and last known addresses of the person or persons appearing to be entitled to abandoned property paid or delivered to the State Escheator . . . ." *Id.* at § 1141 (emphasis added).

20.     "The care and custody . . . of all abandoned property paid to the State Escheator is assumed for the benefit of those entitled to receive the same and the State shall hold itself responsible for the payment of all claims established thereto pursuant to law, less any lawful deductions, which cannot be paid from the General Fund." *Id.* at § 1144(a).

21.     Owners of property escheated to the State of Delaware may claim a return of their property from the State.  *Id.* at § 1146(a).  To claim property, an owner must provide proof of identity and documentation proving a legal right to claim the particular property. http://revenue.delaware.gov/unprop/unprop_search.shtml.

22.     An important public policy underlying the Delaware Escheat Law is the policy of reuniting owners with their unclaimed property.

23.     In Delaware, unclaimed property must be reported and paid on or before March 1 for property that has reached the full dormancy period as of the previous December 31.

24.     The State Escheator may "at reasonable times and upon reasonable notice examine the records of any person or business association or organization to determine whether the person has complied with any provision of [the Delaware Escheat Law]." *Id.* at § 1155.

25.     The State Escheator conducts examinations of holder's records for periods as far back as 1981, which is far beyond the period that holders typically maintain records pursuant to typical document retention policies.  The State Escheator has admitted that most holders do not have records beyond a typical retention period of 7 to 10 years.

26.     Unlike other states' laws, the Delaware Escheat Law does not require that holders keep records for a minimum period of time and/or keep adequate records of owners' addresses.

27.     In July 2010, Delaware's governor signed into law Senate Bill No. 272, as amended by Senate Amendment No. 1 (hereinafter, "S.B. 272").   S.B. 272 amended 12 *Del. C.* § 1155 by permitting the State Escheator to estimate a liability for unclaimed property reporting and payment "[w]here the records of the holder available for the periods subject to [examination] are insufficient to permit the preparation of a report."  In that event,

> [T]he State Escheator may require the holder to report and pay to the State the amount of abandoned or unclaimed property that should have been but was not reported that the State Escheator reasonably estimates to be due and owing on the basis of any available records of the holder or by any other reasonable method of estimation. *Id.*

28.     Pursuant to Section 13(c) of S.B. No. 272, and consistent with *A.W. Financial Services, S.A. v. Empire Resources, Inc.*, 981 A.2d 1114 (Del. 2009) and Delaware's presumption against retroactive application of laws, amended § 1155 is expressly applicable only prospectively (*i.e.*, to periods after July 2010).

29.     After conducting an examination of a holder's records, if the State Escheator finds that a report of unclaimed property is not correct, "the Escheator shall notify the holder in writing by certified or registered mail of the amount of any underreported abandoned or

- 7 -

unclaimed property due and owing." *Id.* at § 1158(a). The "[n]otice of proposed deficiency in payment shall be mailed to the holder within 3 years from the date the report was filed." *Id.*

30.     "Sixty days after the date on which the Audit Manager mails a statement of findings and request for payment, it shall constitute the Audit Manager's final determination of the amount of the holder's liability, including interest and penalties, if any . . ." and becomes enforceable by the State Escheator in the Delaware Chancery Court. 12 *Del. C.* § 1156(a).

31.     In *Delaware v. New York*, 507 U.S. 490 (1993) and *Texas v. New Jersey*, 379 U.S. 674 (1965), the United States Supreme Court established "priority" rules for escheat of identifiable intangible unclaimed property held by a holder that resolved the conflicting claims of different states to such unclaimed property. Under the primary rule, the right and power to escheat the property is accorded to the State of the creditor (often the payee of a check) as recorded on the books and records of the debtor (the obligor of the debt underlying the check). If the debtor does not have the name and address of the owner, the property escheats to the debtor's state of domicile under the secondary rule of priority.

32.     In *Delaware v. New York,* the Supreme Court emphasized that the first step in any analysis under the priority rules is the threshold requirement of first identifying the specific property so that the obligations of the parties can be determined on a transaction-by-transaction basis. The purpose is to identify the entity that is the debtor, because it is the debtors' records that dictate whether the primary or secondary rule applies based on whether owners' addresses are recorded.

33.     The Supreme Court has expressly rejected the use of a "statistical surrogate instead of the debtor's records to locate the last known addresses of creditors" (*Delaware v. New York*, 507 U.S. at 508) and has admonished the states that "nothing in our decisions 'prohibits

the States from requiring [debtors] to keep adequate address records'" (*id*. n.12 (quoting *Pennsylvania v. New York*, 407 U.S. 206, 215 (1972)).

**Plaintiff Filed A Voluntary Disclosure Agreement**

34.     Pursuant to Delaware regulations, a holder that has not been compliant with the Delaware Escheat Law may voluntarily come forward and disclose its noncompliance and report and pay unreported unclaimed property without being subjected to penalties and interest, provided the holder has not been notified that the State is conducting an audit.

35.     Plaintiff had not been notified by the State that it was being audited, so on November 20, 2006 Plaintiff availed itself of the voluntary disclosure program (hereinafter, the "VDA program") by submitting the required Form AP DE-1 for the period 1997-2001.

36.     On April 20, 2007, because the State Escheator had not returned a signed copy of the Form AP DE-1, Plaintiff contacted the State Escheator asking for an executed Form AP DE-1.  Thereafter on April 27, 2007, the State Escheator faxed a signed Form AP DE-1 to Plaintiff.

37.     A couple of weeks later, on May 15, 2007, Plaintiff requested an extension of time until December 2007 to complete the VDA, which the State Escheator granted.   At the time, extensions of time were routinely granted to holders under the VDA program.

38.     On December 21, 2007, Plaintiff notified the State Escheator that Plaintiff had adequate records available for the VDA period.  Because Plaintiff had kept bank statements, bank reconciliations and related records since its inception, Plaintiff was able to conduct research and identify uncashed checks that constituted unclaimed property.   Plaintiff's VDA included a list of owners (*i.e.*, creditors), their addresses and the amount of property that Plaintiff held belonging to each owner where the owners' addresses were in Delaware or were unknown as required under the priority rules in *Delaware v. New York* and *Texas v. New Jersey*.

39.     On December 31, 2007, Plaintiff began its initial filings in all other states, where applicable, and reported and paid almost $300,000 in unclaimed property to states other than Delaware, pursuant to those states' unclaimed property laws.  Plaintiff later provided a schedule of those initial filings, including payment amounts, to the State Escheator.

40.     On February 26, 2008, Plaintiff's consultants sent a letter to the State Escheator with all details of Plaintiff's VDA  for the periods 1997-2001, along with supporting information so that the State Escheator would have the information in advance of a scheduled March 18, 2008 meeting with Plaintiff.  The letter also reminded the State Escheator that Plaintiff had all of its records back to 1997.  On February 28, 2008, Plaintiff also timely filed a report and paid unclaimed property to the State of Delaware for the calendar year 2002 property.

41.     On March 18, 2008, Plaintiff and its consultant met in person with the State Escheator to review the VDA, provided a disk with the supporting documentation (including copies of bank statements and bank reconciliations) and answered questions.   The State Escheator asked for additional follow-up information, which Plaintiff provided on May 30, 2008.

42.     On June 2, 2008, the State Escheator emailed to Plaintiff a copy of the Form AP-DE-2, which is the final VDA agreement with the State and asked Plaintiff to return a signed copy to the State Escheator.

43.     On June 5, 2008, Plaintiff submitted the signed Form AP-DE-2, Attachment A (which included the report of unclaimed property) and paid past due unclaimed property in the amount of $17,637.04 for the period 1997-2001 under the VDA program.

44.     Delaware cashed Plaintiff's check for $17,637.04 on June 10, 2008.

**Delaware Notified Plaintiff That It Was Under Audit**

45.     In a letter dated June 10, 2008, the day that Plaintiff's check to the State of Delaware was cashed, the State Escheator notified Plaintiff that he was conducting an unclaimed property audit of years as far back as 1981, including the period 1997-2001 (even though Plaintiff did not exist until December 1996).

46.     In that letter, Delaware notified Plaintiff that a contract auditor, Kelmar Associates LLC ("Kelmar"), would be conducting the audit on behalf of the State of Delaware.

47.     Kelmar held an opening meeting on October 8, 2008 and requested information and documentation from Plaintiff.   Throughout the audit, Kelmar requested additional information, which Plaintiff produced.

48.     In the examination, Plaintiff provided a list of bank disbursement accounts and Kelmar selected four such accounts to review for underreported unclaimed property:  a payroll account, an expense reporting account, an "other" disbursements account, and the principal disbursement account. Kelmar concluded that the payroll account, the expense reporting account, and the "other disbursement" accounts were in substantial compliance and Plaintiff had not underreported unclaimed property in those accounts for any period.

49.     With respect to the principal disbursement account, Kelmar reviewed Plaintiff's records for periods after 2001 (*i.e.*, 2002-2008) and similarly concluded that Plaintiff had not underreported unclaimed property escheatable to Delaware for that period.

50.     As part of the audit, Kelmar requested information regarding numerous other general ledger accounts on Plaintiff's trial balance, including accounts receivable, which Plaintiff provided.

51.     Although Plaintiff had informed Kelmar multiple times during the examination that Plaintiff had records for the period 1997-2001, and despite the fact that Plaintiff had submitted a disk containing those records to the State Escheator on March 18, 2008, Kelmar examined records for the principal disbursements account solely from 2002-2008 in the audit.

52.     In or about October 2010, Kelmar submitted to Plaintiff a Report of Examination ("ROE") showing that Plaintiff had not underreported any unclaimed property in the principal disbursement account for the periods that Kelmar actually examined (*i.e.*, 2002-2008). However, the ROE included purported underreported unclaimed property in the principal disbursement account purportedly escheatable to Delaware (a single state) for the period 1997-2001 in the amount of $297,436.55 based solely on an **estimate** calculated by extrapolating, *inter alia,* Plaintiff's unclaimed property owed to **all** other states for the period 2002-2008.

53.     In an October 25, 2010 email to Kelmar, Bridget Sherick, Vice President, Corporate Accounting for Plaintiff, stated:  "I am still a bit confused by the projection analysis since, as I have consistently stated to you in previous conversations, we have all the disbursement account records back to the inception of Plaintiff.  I do not believe any estimation or extrapolation of liability for periods prior to 2002 is appropriate."

54.     Nevertheless, Kelmar issued another Report of Examination to Plaintiff on December 22, 2010 (which it identified as the final version) with an estimate of liability for the period 1997-2001 in the amount of $297,436.55 and no liability for the period 2002 through 2008.

55.     On February 16, 2011, Ms. Sherick spoke with the State Escheator, Mark Udinski, by telephone and told him that Plaintiff had records since inception and therefore an

estimate of liability was not appropriate for the period 1997-2001.  Mr. Udinski said that he would reach out to Kelmar and have them set up a time to continue auditing Plaintiff's records.

56.     However, Kelmar never requested Plaintiff's records for the period 1997-2001. Instead, almost two years later on October 25, 2012, Kelmar submitted another Report of Examination to Plaintiff that was identical to the December 22, 2010 Report of Examination.

57.     In a November 1, 2012 email to Kelmar (which also was sent to Mr. Udinski), Ms. Sherick said:  "We see that Kelmar has calculated liability based on an estimation of liability for 1997-2001.  However, as we have discussed in the past and as I have discussed with Mark Udinski by phone, Plaintiff has detailed records going back to inception (1997)."

58.     Plaintiff did not hear from Kelmar or Delaware again until Plaintiff received Delaware's March 4, 2013 Demand for Payment in the amount of $297,436.55 (which was associated with a single bank disbursement account), the amount that Kelmar had estimated as a liability for the period 1997-2001 in its October 2010, December 22, 2010 and October 25, 2012 Reports of Examination.

59.     However, because Delaware's March 4, 2013 demand for payment from Plaintiff for unclaimed property for the period 1997-2001 was mailed more than 3 years after Plaintiff filed its June 5, 2008 report and paid its liability for that period, Delaware's Demand for Payment was barred by the 3-year statute of limitations in 12 *Del. C.* § 1158(a).

60.     The Delaware Escheat Law provides that "[i]n the case of an omission of abandoned or unclaimed property from a report having a value in excess of 25% of the amount of abandoned or unclaimed property disclosed in a report, a notice of deficiency in payment may be mailed to the holder within 6 years from the date the report was filed" (*id.* at § 1158(a)), however Defendants did not examine Plaintiff's records for any of the years in the period 1997-

2001 and therefore there is no basis for claiming that Plaintiff underreported its unclaimed property by more than 25% in any of those years.

61.     On March 12, 2013, Plaintiff's counsel, Diane Green-Kelly, sent a letter to Mark Udinski requesting a telephone conference and objecting to the March 4, 2013 Request for Payment on grounds that (a) estimation is not authorized by the Delaware Escheat Law for 1997-2001 because, *inter alia*, Plaintiff has records for that period from which its actual liability can be determined; (b) the statute of limitations bars the Demand; and (c) the estimation methodology used to calculate a liability is faulty for a number of fundamental reasons.

62.     A telephone conference was held on March 26, 2013, which was attended by Mark Udinski, two Delaware Deputy Attorney Generals, and Michelle Whitaker, Senior Tax Auditor for Delaware, Scott Romberger, Senior Vice President and Chief Accounting Officer of Plaintiff, and Diane Green-Kelly.  In the telephone conference, Plaintiff representatives re-stated the objections and further pointed out that, pursuant to the Delaware Escheat Law, the Demand was not final and enforceable until 60 days after mailing under 12 *Del. C.* § 1156(a), not 30 days as stated in the Demand.

63.     The State Escheator responded by demanding that Plaintiff prove that it did ***not*** owe the $297,436.55 assessed for the period 1997-2001, even though Plaintiff had already provided a disk with complete support of its liability for 1997-2001 with its June 5, 2008 report and had explained the details of the report in a March 18, 2008 meeting.  Plaintiff asked that the State Escheator provide a list of the specific property (*i.e.*, the individual uncashed checks) that he contends makes up the $297,436.55 so Plaintiff could demonstrate that the property is not unclaimed. The State Escheator refused.

64.     The State Escheator demanded that Plaintiff produce "all of its records" without identifying which records he wanted to see.  In part because Plaintiff knew that it had already produced its 1997-2001 records, Plaintiff asked that the State Escheator please identify in writing which additional records he wanted to examine.

65.     The State Escheator further responded in loud, mocking and threatening tones of voice accusing Plaintiff of  misrepresenting the extent of the records it had maintained and disputed Plaintiff's assertion about what had previously been represented during the audit concerning the availability of such records.

66.     The State Escheator also responded by, *inter alia*, threatening to assess penalties and interest if Plaintiff did not pay the amount requested in the Demand for Payment within the 30-day deadline provided in his March 4, 2013 Demand for Payment. The State Escheator continued to demand payment within 30 days, even though the Delaware Escheat Law provides that a Demand for Payment is not final and enforceable until 60 days after mailing.

67.     Two days later, in an email dated March 28, 2013, the State Escheator demanded numerous bank statements, reconciliations and consolidated bank detail for several of Plaintiff's bank accounts for the 5–year period 1997-2001 and demanded production by April 15, 2013 (*i.e.*, within two weeks).  Most of the documents requested had already been produced on March 18, 2008, revealing that the State Escheator had not even attempted to determine what information and records Plaintiff had already produced.  He also stated:  "I would also like to reiterate that if payment requested is not received by April 4, 2013 full penalty and interest will be assessed."

68.     On April 3, 2013, Plaintiff wrote to the State Escheator informing him that the additional records would be produced by April 15, 2013, pointing out that the Demand for

Payment is not final until 60 days after mailing (*i.e.*, on May 3, 2013), not 30 days.  The State

Escheator admitted by email on April 5, 2013 that the deadline was 60 days, not 30 days.

69.     On April 15, 2013, Plaintiff produced the additional information that the State

Escheator had demanded in his March 28, 2013 email.

70.     The State Escheator nevertheless did not withdraw his Demand for Payment and

continues to demand payment in the amount of $297,436.55 – an impermissible estimate of

extrapolated liability for 1997-2001 – while it examines Plaintiff's records for that period for the

first time, even though his Demand is barred by the statute of limitations.

71.     There is no statutory provision requiring the State Escheator to complete an

examination within a limited time period.  Therefore, the State Escheator can manipulate the

timing of the continuing examination by failing to complete the examination while the State uses

Plaintiff's funds indefinitely without paying interest thereon and depriving Plaintiff of the use of

the money to operate its health care facilities and generate a profit.  Indeed, the examination of

Plaintiff had previously stopped for more than two years from at least the time that Kelmar

issued its ROE dated December 22, 2010 until the State's March 4, 2013 Demand.

72.     If Plaintiff pays the $297,436.55 to the State pending the outcome of the State's

audit to avoid penalties and interest, and the State never completes its examination of Plaintiff's

records for 1997-2001, Plaintiff will have no remedy because it is barred by the Eleventh

Amendment to the U.S. Constitution from suing a state for damages.

73.     An important public policy of the Delaware Escheat Law is to facilitate and

promote reuniting owners with their property and to permit the State to use unclaimed funds until

the true owner claims those funds.  The State Escheator's Demand for Payment is against public

policy because it is based on an estimate, even though Plaintiff has records from which the amount of property owned by another and their address can be identified.

74.     The money that Delaware seeks from Plaintiff cannot be tied to any specific property and/or specific owners, and is not capable of being claimed by owners.   Indeed, Plaintiff's records show that it has not underreported any unclaimed property owed to Delaware and the property that Defendants demand from Plaintiff already has been escheated to other states with priority claims to that property.

**Defendants' Demand for Payment Exceeds Their Authority Under The Delaware Escheat Law And Is Arbitrary, Capricious and Against the Manifest Weight of the Evidence**

75.     The Delaware Escheat Law only authorizes the State Escheator to estimate a liability for periods beginning in July 2010; nevertheless here the State Escheator has estimated a liability for Plaintiff for 1997-2001, thereby applying S.B. 272 retroactively in violation of the plain language of S.B. 272.

76.     To apply S.B. 272 retroactively would violate Plaintiff's right to substantive due process because it would require that Plaintiff turn over property from 1997-2002 that, at the time, Plaintiff had no notice it would owe to Delaware if it failed to retain adequate records.

77.     Further, S.B. 272 authorized the State Escheator to estimate a liability for unclaimed property *only* where a holder's records are insufficient to prepare a report.

78.     Here, Plaintiff has records sufficient to prepare a report for the period 1997-2001 and has provided those records to the State Escheator.

79.     Moreover, the estimation methodology that Delaware and Kelmar used was not supported by evidence, and intentionally was calculated in an arbitrary and capricious manner that is against the manifest weight of the evidence.

80.     For example, S.B. 272 made clear that when estimation is authorized, the State Escheator may only require a holder "to report and pay to the State the amount of abandoned or unclaimed property that should have been but was ***not*** reported."  12 *Del. C.* § 1155 (emphasis added).   Nevertheless, Defendants' estimation methodology assesses Plaintiff for unclaimed property that should have been but ***was*** reported.

81.     Further, Defendants' estimation methodology assesses Plaintiff for unclaimed property that was paid to another state under the priority rules established in *Delaware v. New York*, 507 U.S. 490 (1993) and *Texas v. New Jersey*, 379 U.S. 674 (1965).   Such amounts are not an amount that "should have been but was not reported" ***to Delaware*** as required by the Delaware Escheat Law.

82.     Defendants' estimation methodology assesses Plaintiff for property that Plaintiff returned to owners ***before*** the property was dormant.   Such property is not unclaimed property as a matter of law because it has not reached the dormancy period.   Penalizing Plaintiff for returning property to owners is against the public policy of the Delaware Escheat Law.

83.     The estimation methodology applied here assesses Plaintiff for property to which other states have a priority claim, where those states have exempted such property from escheatment, such as in a business-to-business exemption.   Therefore, Defendants' estimate violates Article IV, Section 1 of the U.S. Constitution, which requires Delaware to give full faith and credit to other states' laws, including their unclaimed property laws.

84.     The $297,436.55 estimated liability that Defendants demand from Plaintiff for 1997-2001 is arbitrary, capricious and against the manifest weight of the evidence for the additional reason that it is derived from an examination of Plaintiff's records for 2002-2008, a period for which Kelmar's Report of Examination shows a paid liability of only $8,399.74.

Delaware cannot reasonably estimate that Plaintiff underreported a liability of $297,436.55 for the 5-year period 1997-2001 based on Kelmar's determination that Plaintiff had paid a liability of $8,399.74 for the longer 7-year period 2002-2008.

85.     The State Escheator's estimation methodology for calculating unclaimed property also is based on the unsupported assumption that any of Plaintiff's checks that were outstanding for more than 90 days, or were voided or stopped more than 30 days after issuance,   are presumed abandoned.  However, under the Delaware Escheat Law, property is not presumed abandoned until it has been dormant for five years.

86.     Delaware's estimation methodology for calculating unclaimed property also is based on the unsupported assumption that the amount of unclaimed property that a holder must pay to all states in any given year, as a percentage of revenue, is constant year to year.  However, Kelmar's own data from its audit of Plaintiff refutes this assumption.

87.     Plaintiff has filed the required reports of unclaimed property to the appropriate states, including Delaware, in compliance with the respective unclaimed property statutes and the priority rules established in *Delaware v. New York*, 507 U.S. 490 (1993) and *Texas v. New Jersey*, 379 U.S. 674 (1965) since February 2008.

88.     The State Escheator's threat to assess interest and penalties against Plaintiff if it does not pay the $297,436.55 by the State Escheator's deadline can increase the liability by as much as 75%.

89.     Moreover, Plaintiff submitted its June 2008 report as part of the VDA program authorized by Delaware regulations in effect at the time.  Those regulations waive interest and penalties to holders who make a voluntary disclosure.

90.     Plaintiff has fully cooperated with Kelmar and Delaware in connection with the audit and has done nothing to provoke or justify an assessment of interest or penalties.   The Delaware Escheat Law only authorizes penalties where a holder has failed to file a report when required to do so, failed to pay amounts due, and/or files a fraudulent report.   12 *Del. C.* § 1159. None of those circumstances exists here.

## COUNT I

### (Violation of And Preemption by Federal Common Law)

91.     Plaintiff repeats and realleges paragraphs 1 through 90 above as if fully set forth herein.

92.     The United States Supreme Court, pursuant to its exercise of original jurisdiction, established priority rules through which States determine their respective rights to unclaimed property.

93.     In *Texas v. New Jersey*, the Court held that the right and power to escheat a debt is accorded to the State of the creditor, as reflected on the books and records of the debtor.   This is referred to as the primary rule.

94.     The Court further held that under the secondary rule, if a holder lacks an address of the creditor, the holder's state of domicile can claim the unclaimed property.

95.     Defendants' Demand for Payment violates the federal common law, as set forth in *Texas v. New Jersey*, by requiring Plaintiff to escheat to Delaware property of creditors with addresses in other states.

96.     According to Plaintiff's records for the period 1997-2001, Plaintiff held approximately $300,000 in unclaimed property which, in December 2007, Plaintiff began escheating to the appropriate states pursuant to the priority rules established by the Supreme

Court.   Defendants now demand that plaintiff escheat that same property to Delaware in violation of federal common law.

97.     Defendants' Demand also violates the federal common law by demanding that Plaintiff escheat to Delaware property exempted from escheatment by states with a priority claim to such property under the primary rule.

98.     Therefore, Defendants' enforcement of the Demand for Payment violates the federal common law and is preempted.

## COUNT II

### (Substantive Due Process Under The Fourteenth Amendment To The U.S. Constitution and Delaware Constitution)

99.     Plaintiff repeats and realleges paragraphs 1 through 98 above as if fully set forth herein.

100.     The Due Process clause of the Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.

101.     The Due Process clause of the Delaware Constitution provides similarly that no person shall be "deprived of life, liberty, or property, unless by the judgment of his or her peers" Del. Const. art. I, § 7.

102.     Defendants demand that Plaintiff pay to Delaware as unclaimed property, property that Plaintiff has already escheated to other states with priority claims to such property under *Delaware v. New York.*

103.     Plaintiff has a property interest in the profits that it can earn on the money that the State Escheator seeks to have Plaintiff pay to Delaware without lawful basis.

- 21 -

104.    Plaintiff also has a property interest in not being subjected to claims by Defendants that are barred by a statute of limitations.

105.    Delaware's primary interest in collecting the $297,436.55 Demand for Payment from Plaintiff is in obtaining revenue for the State to deposit into the General Fund; there is virtually no possibility that any owner will claim such property because to do so, the owner must identify the specific property and demonstrate a right to claim such property.   That is not possible when Plaintiff's payment is based on an estimate of liability.

106.    Defendants collect hundreds of millions of dollars each year from unclaimed property based primarily on estimates of liability without lawful authority that will never be claimed by owners because the liabilities are not based on the identification of specific property and/or owners.   Therefore, a large portion of the unclaimed property that Delaware obtains from examinations of holders serves solely as a revenue source for the state with no intent of reuniting property with owners against the public policy of the Delaware Escheat Law.

107.    The State of Delaware's interest in revenue for the State is outside the primary purpose and public policy of the Delaware Escheats Law, which is to hold property for the rightful owners as a custodian until the owners claim it.

108.    On information and belief, few, if any, owners will claim property from Delaware after it is escheated, especially where property escheated is not identified and no owner is identified because the liability is estimated.

109.    Delaware's interest in revenue is insufficient to overcome Plaintiff's legitimate property interest, in violation of the Fourteenth Amendment to the U.S. Constitution.

## COUNT II

### (Unlawful Taking Without Just Compensation U.S. Constitution and Delaware Constitution)

110. Plaintiff repeats and realleges paragraphs 1 through 109 above as if fully set forth herein.

111. The Takings clause of the Fifth Amendment to the U.S. Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V.

112. The Takings clause of the Delaware Constitution similarly provides that private property shall not "be taken or applied to public use without the consent of his or her representatives, and without compensation being made." Del. Const. art. I, § 8.

113. Plaintiff has a vested property interest in the property that Delaware seeks to have Plaintiff pay to Delaware without lawful basis because it is not unclaimed property.

114. By demanding that Plaintiff pay to Delaware property in which Plaintiff has a vested property interest, the State Escheator has intentionally exceeded his authority under the Delaware Escheat Law. The demand is based on an assessment that is arbitrary, capricious and against the manifest weight of the evidence and is barred by the statute of limitations in the Delaware Escheats Law, Therefore, the State Escheator is unlawfully taking Plaintiff's property without just compensation in violation of the U.S. Constitution and the Delaware Constitution.

115. Delaware's primary interest in enforcing its demand against Plaintiff is in obtaining revenue for public use, which is insufficient to overcome Plaintiff's legitimate property interest.

## COUNT IV

### (Violation of the Commerce Clause and Full Faith and Credit Clause)

116.    Plaintiff repeats and realleges paragraphs 1 through 115 above as if fully set forth herein.

117.    Pursuant to the Commerce Clause of the United States Constitution, Congress has the authority to "regulate Commerce . . . among the several States."  U.S. Const. Art. 1, § 8, cl. 3.

118.    The manner in which Defendants exceed their authority to enforce the Delaware Escheat Law has extraterritorial effects that adversely affect economic production, and therefore interstate commerce, in other states.

119.    For example, the State Escheator's Demand assesses Plaintiff for property owned by entities in other states that have expressly exempted the property from escheatment under a business-to-business exemption.  By requiring Plaintiff to escheat such property to Delaware in violation of federal common law and the priority rules in *Delaware v. New York* and *Pennsylvania v. New Jersey*, Defendants violate Article IV, Section 1 of the Constitution, which requires Delaware to give full faith and credit to other states' laws, including unclaimed property laws.

120.    By requiring Plaintiff to pay to Delaware property that other states expressly exempt from escheatment, Defendants interfere with commerce in those states, states whose policy it is to keep unclaimed funds in the hands of private businesses for use and investment in the local economy.

121.    Plaintiff has facilities in States which exempt business-to-business transactions from the unclaimed property law.  By requiring Plaintiff to pay to Delaware property that Plaintiff acquired in those states in business-to-business transactions, Defendants interfere with

commerce in those states in violation of the Commerce Clause in the U.S. Constitution, and interfere with the states' respective public policies as expressed in their statutes in violation of the Full Faith and Credit Clause of the U.S. Constitution.

## COUNT V

### (Injunctive Relief)

122.    Plaintiff repeats and realleges paragraphs 1 through 121 above as if fully set forth herein.

123.    The manner in which Defendants have exceeded their authority in enforcing the Delaware Escheat Law subjects Plaintiff to civil and other penalties and interest and violates Plaintiff's due process rights.

124.    The retroactive application of S.B. 272 violates Plaintiff's Constitutional rights.

125.    Defendants' Demand for Payment is barred by the statute of limitations and thereby violates Plaintiff's right to substantive due process.

126.    Plaintiff will suffer irreparable harm if a preliminary injunction is not entered enjoining Defendants from continuing to audit Plaintiff and enforcing the Demand for Payment.

127.    Plaintiff has a likelihood of success on the merits of its claims.

128.    Therefore, Plaintiff respectfully requests an order enjoining Defendants from continuing to consume Plaintiff's human and financial resources by continuing to conduct an audit, and enforcing the Demand for Payment and assessing interest and penalties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court, enter an order:

A.    Declaring that Defendants have exceeded their authority under the Delaware Escheat Law by issuing the Demand for Payment to Plaintiff;

B.      Declaring that the State Escheator's methodology for calculating its assessment against Plaintiff is arbitrary and capricious and against the manifest weight of the evidence;

C.      Declaring that any attempts to enforce the Demand for Payment in violation of the 3-year statute of limitations in the Delaware Escheats Law violates Plaintiff's right to substantive due process;

D.      Declaring that the collection by Defendants of the Demand against Plaintiff would violate Plaintiff's substantive due process rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution and Article I, § 7 of the Delaware Constitution;

E.      Declaring that collection action by Defendants of the $297,436.55 demanded against Plaintiff would constitute an unlawful taking without just compensation in violation of the Fifth Amendment to the U.S. Constitution and Article I, § 8 of the Delaware Constitution;

F.      Declaring that Defendants' Demand violates the Full Faith and Credit Clause of the U.S. Constitution.

G.      Enjoining each of the Defendants from (i) continuing to conduct an audit of Plaintiff's compliance with the Delaware Escheat law, and (ii) enforcing the Delaware Escheats Law against Plaintiff by taking any action to collect the $297,436.55 (or any part thereof) that the State Escheator demanded of Plaintiff;

H.      Enjoining each of the Defendants from assessing penalties and/or interest; and

I.      Awarding such other and further relief as the Court deems just and equitable.

Dated:  April 17, 2013

Respectfully submitted,

REED SMITH LLP

OF COUNSEL:

*/s/ Brian M. Rostocki*
Brian M. Rostocki (No. 4599)
John C. Cordrey (No. 5324)
1201 Market Street, Suite 1500
Wilmington, DE 19801
Telephone:  (302) 778-7500
Fax:  (302) 778-7575
brostocki@reedsmith.com
jcordrey@reedsmith.com

*Counsel for Plaintiff*

Diane Green-Kelly (*pro hac vice* pending)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, IL 60606
Telephone:  (312) 207-1000
Fax: (312) 207-6400
dgreenkelly@reedsmith.com